# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| WOKCHOW  DEVELOPMENT, LLC, on behalf of itself and all others similarly situated, )<br>)<br>) | |
| Plaintiff, ) | |
| v.  ) | CASE NO. 3:18-cv-01142 |
| DOORDASH, INC.,  ) | |
| Defendant.  ) | |

## RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO TRANSFER

Plaintiff WokChow Development, LLC ("WokChow") hereby opposes a transfer or stay. Defendant DoorDash, Inc. ("DoorDash") has stated this Court has no jurisdiction and this matter should be in state court.  Plaintiff is glad to proceed in state court.  In accordance with clear precedent, until jurisdiction is decided, this Court is precluded from considering transfer.

If this case stays in federal court, a transfer is still not warranted.  The *Burger Antics* case in the Northern District of Illinois, which DoorDash contends this case is a copycat of, is a trademark action.  WokChow has no trademark and makes no allegations that would put it within the scope of the class described in the *Burger Antics* case.  Cases with such divergent claims are not subject to transfer.

## APPLICABLE STANDARDS

### A.  Jurisdiction

The Sixth Circuit has stated that a District Court's first obligation is to determine whether it has subject matter jurisdiction.  *BancOhio Corp. v. Fox*, 516 F.2d 29, 31-32 (6th Cir. 1975). Unlike other issues not involving the merits of a case, subject-matter jurisdiction may be raised

at any time, by any party or even *sua sponte* by the court itself. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990). Moreover, parties may not consent or create jurisdiction by their silence or inaction. *E.g.*, *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court"); *California v. LaRue*, 409 U.S. 109, 112 n.3 (1972) (parties may not confer subject-matter jurisdiction upon the court by consent).

**B. First-to-File Rule**

The first-to-file "rule is a doctrine of federal comity that promotes judicial efficiency." *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005); *Thomas & Betts Corp. v. Hayes,* 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002); *accord Plating Res., Inc. v. UTI Corp.,* 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.,* 16 F. App'x 433, 437 (6th Cir. 2001). The rule generally provides that "when duplicative lawsuits are pending in separate federal courts" "'the entire action should be decided by the court in which an action was first filed.'" *Thomas & Betts*, 222 F. Supp. 2d at 995 (quoting *Smith v. S.E.C.,* 129 F.3d 356, 361 (6th Cir. 1997)); *accord Zide Sport Shop,* 16 F. App'x at 437.

Duplicative lawsuits are those in which the issues "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Fuller*, 370 F. Supp. 2d at 688 (citing *Smith,* 129 F.3d at 361). In determining whether actions are duplicative and the first-to-file rule applies, courts consider three factors: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. *Fuller*, 370 F. Supp. 2d at 688; *also Cook v. E.I. DuPont de Nemours and Co.*, 2017 WL 3315637, at *2 (M.D. Tenn. Aug. 3, 2017); *Thomas & Betts,* 222 F. Supp. 2d at 996; *Plating Res.,* 47 F. Supp.

2

2d at 903-04. When evaluating the similarities between the parties and issues at stake, the crucial inquiry is whether the parties and issues **substantially** overlap. *Fuller*, 370 F. Supp. 2d at 688 (emphasis added); *also Thomas & Betts,* 222 F. Supp. 2d at 996.

The first-to-file rule should not be applied too rigidly or mechanically. *Plating Res.,* 47 F. Supp. 2d at 903. Indeed, whether to apply the rule is discretionary. *Smith,* 129 F.3d at 361; *Thomas & Betts,* 222 F. Supp. 2d at 996; *Plating Res.,* 47 F. Supp. 2d at 903. Further, it is within the discretion of this Court to decline to enforce it "where equity so demands." *Collier v. MedCare Inv. Corp.*, 2018 WL 2364050, at *2 (M.D. Tenn. May 24, 2018).

When considering the equities of a request to transfer venue under the first-to-file rule, courts often apply a similar analysis as they would in evaluating a motion to transfer under 28 U.S.C. § 1404(a). *Employers Ins. of Wausau v. Fox Ent. Group, Inc.,* 522 F.3d 271, 278 (2d Cir. N.Y. 2008); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). The Sixth Circuit has set forth a six-factor test when considering a motion to transfer venue. *Doe v. Univ. of Tenn.*, 2016 WL 1253004, at *7 (M.D. Tenn. Mar. 29, 2016) ("The Sixth Circuit has suggested that relevant factors to consider include: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice") (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009)).

The moving party bears the burden of establishing that these factors weigh in favor of transferring venue. *Univ. of Tenn.*, 2016 WL 1253004, at *7; *Picker Int'l, Inc. v. Travelers Indem. Co.,* 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998); *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996). Ordinarily, "unless the balance is strongly in favor of the

3

defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320 (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)).

Applying these standards here, it is clear that – even if this case stays in federal court – transfer to the Northern District of Illinois is inappropriate. The motion should be denied.

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

**I.      DoorDash's Denial of Jurisdiction Precludes Transfer.**

DoorDash has requested that this Court transfer this case to the Northern District of Illinois even though it disputes that this Court has jurisdiction over this matter. *See* Docket No. 26, ¶ 9 (denying jurisdiction is proper in this Court); Docket No. 25, p. 1 (listing jurisdiction as an issue in dispute in the Initial Case Management Order). The Sixth Circuit has made it clear that jurisdictional issues must be decided as soon as practicable. *See, e.g.*, *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 629 (6th Cir. 1992); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999); *Strategic Assets, Inc. v. Fed. Express Corp.*, 190 F. Supp. 2d 1065, 1066–67 (M.D. Tenn. 2001). Federal courts are courts of limited jurisdiction, and have an obligation to examine their subject matter jurisdiction. *Robinson v. Michigan Consolidated Gas Co., Inc.*, 918 F.2d 579, 582 (6th Cir. 1990); *Crump v. WorldCom, Inc.*, 128 F. Supp. 2d 549, 552-53 (W.D. Tenn. 2001). Indeed, a District Court's first obligation under these circumstances is to determine whether it has subject matter jurisdiction because, without such jurisdiction, there is no action to transfer or change venue. *See BancOhio*, 516 F.2d at 31-32; *Strategic Assets*, 190 F. Supp. 2d at 1067.

DoorDash has denied that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), contending federal jurisdiction does not exist because either there are less than 100 Class members, the aggregate amount in controversy does not exceed $5 million, or at least one Class

4

member is a citizen of a state different from Defendant. *See* Docket No. 26, ¶ 9. DoorDash has also denied that this Court has personal jurisdiction in this case. *Id.* at ¶ 10. If DoorDash is correct that subject matter jurisdiction is lacking, then this case should be sent to state court, not transferred to another federal court as DoorDash suggests.

In light of DoorDash's denial of Plaintiff's allegation that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2), this Court must resolve this question before issuing a ruling on transfer. *E.g.*, *Sherwood v. Microsoft Corp.*, 91 F. Supp. 2d 1196, 1199 (M.D. Tenn. 2000). No matter how desirable DoorDash feels it may be to transfer and consolidate all litigation into the same forum, "[s]uch a transfer cannot be made unless the district court properly has jurisdiction of the subject matter of the case." *Id.* Therefore, DoorDash's jurisdictional challenge must be resolved before its motion to transfer is entertained.

If jurisdiction is found lacking, Plaintiff will be glad to proceed in state court. As such, it would be particularly wasteful to make the parties travel to Illinois in order to procure a determination.

## II. The First-To-File Rule Does Not Apply.

Although *Burger Antics* was filed several months prior to this case, the other necessary elements for transfer cannot be met.

### A. The Parties Are NOT Substantially Similar.

Despite DoorDash's arguments to the contrary, it is clear that the parties in *Burger Antics* are significantly dissimilar to this case. Burger Antics asserts that it "has a distinct Logo or Mark that features a crossed fork and spatula with flames rising behind it" and that this Logo or Mark "is both a common law Trademark and a common law Trade Dress." *See* Burger Antics Amended Complaint, ¶ 11. The other plaintiff, Sushi Para Co., asserts that it has a Federal

Service Mark Registration that was registered on August 14, 2012 and that it also has a distinct Trade Dress.  *Id.* at ¶¶ 15-16.  By contrast, WokChow does not assert that is has any distinct logo or trademark, or that it has any Federal Service Mark Registration.  *See generally* WokChow Complaint (failing to assert any such factual allegations).  This is a critical distinction.

While DoorDash suggests that "all of the members of the putative class in this case are also members of the putative class in [*Burger Antics*]," this is obviously not true.  The allegations in *Burger Antics* make it clear that the focus of the case is DoorDash's use of the putative class members' marks and Trade Dress without permission and whether DoorDash's unauthorized use creates confusion in customers.  *E.g.*, Burger Antics Amended Complaint, ¶¶ 21, 23, 26, 27, 32 (emphasizing same).  The class definition in *Burger Antics* also emphasizes the use of the Trade Dress and/or mark by DoorDash.  *Id.* at ¶ 30.  WokChow would not be included in such a class.

Unlike the plaintiffs in *Burger Antics*, here the focus of WokChow's putative class has absolutely nothing to do with the use of marks and Trade Dress.  Because WokChow would not be included in the *Burger Antics* class, the parties cannot and are not substantially similar.  Therefore, transfer would be inappropriate.  *E.g.*, *Kambala v. Signal Int'l, LLC*. 2014 WL 11512236, at *3 (E.D. Tex. July 16, 2014) (finding **some** overlap between the parties did not satisfy the requirement that there be **substantial** overlap); *Alhassid v. Bank of Am., N.A.*, 2014 WL 2581355, at *2 (S.D. Fla. June 9, 2014) (any overlap between the parties that existed was not substantial); *Wilkie v. Gentiva Health Servs., Inc.*, 2010 WL 3703060, at *3-4 (E.D. Cal. Sept. 16, 2010) (finding it unclear whether there was substantial overlap between the two cases absent discovery).  The only party included in both cases is DoorDash.  As such, the second element is not satisfied.

**B.    WokChow's Claims Differ from the Claims in *Burger Antics*.**

There is also no overlap among the legal issues in this case and *Burger Antics*. The first-to-file rule requires "the cases should be more than merely related to support a motion to transfer when venue is otherwise appropriate." *Kambala*, 2014 WL 11512236, at \*3. Here, there is ***no overlap*** among the claims in the two cases.

In *Burger Antics*, the plaintiffs brought claims under the following legal theories: (1) Federal Trademark Infringement under 15 U.S.C. § 1114; (2) Federal Unfair Competition under 15 U.S.C. § 1125(a); (3) Dilution under 15 U.S.C. § 1125(c); (4) Illinois Deceptive Trade Practices Act; (5) Illinois Consumer Fraud Act; and (6) Common Law Trademark Infringement. *See* Burger Antics Amended Complaint, ¶¶ 37-65. By DoorDash's own admission, at the heart of the case in *Burger Antics* is "whether DoorDash infringes upon non-partner restaurants' federally registered or common law trademarks." *See* Docket No. 30, p. 8.

In contrast, WokChow has brought claims under the following legal theories: (1) Declaratory Relief; (2) Tortious Interference with Business Relations; (3) Unjust Enrichment; and (4) Tennessee Consumer Protection Act. *See* WokChow Complaint, ¶¶ 45-79. WokChow does not even have a registered trademark. Thus, there is absolutely no overlap – much less substantial overlap – with the claims asserted in *Burger Antics*.

In hopes of avoiding this reality, DoorDash contends that there actually is overlap because all of the claims asserted by WokChow will "rise or fall with the trademark claims in [*Burger Antics*]." *See* Docket No. 30, p. 9. Not so. Indeed DoorDash admits as much with respect to the Declaratory Relief claim asserted by WokChow by not even arguing that this claim would be decided based on the trademark claims in *Burger Antics*. *See generally id.* (failing to raise such an argument).

7

DoorDash's arguments as to the remainder of WokChow's claims also fail. A decision on the trademark claims in *Burger Antics* will have no impact on WokChow's tortious interference claim. Under Tennessee law, liability can be imposed on the interfering party if the plaintiff demonstrates:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citations omitted). WokChow could demonstrate each of these factors even if DoorDash were to prevail on the trademark claims in *Burger Antics*. WokChow would not have to show a trademark violation to establish an improper motive or means as DoorDash suggests, because Tennessee courts have made it clear that improper motive or means can be satisfied by demonstrating violations of "recognized common law rules, violence, threats, bribery, unfounded litigation, fraud, misrepresentation, defamation, duress, undue influence, misuse of confidential information, or breach of a fiduciary duty," as well as "'unethical conduct' described as sharp dealing, overreaching or unfair competition." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 176-77 (Tenn. Ct. App. 2007). WokChow's tortious interference claim is not subsumed by the trademark claims in *Burger Antics*.

A decision on the trademark claims in *Burger Antics* will have no impact on WokChow's unjust enrichment claim. Under Tennessee law, the elements of an unjust enrichment claim are: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be

8

inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotations omitted). DoorDash claims that WokChow would be unable to prove the third factor if it were to prevail on its trademark claims in *Burger Antics*. *See* Docket No. 30, pp. 9-10. However, a finding that DoorDash did not violate trademark laws will have no impact on restaurants like WokChow that have no such claims to assert against DoorDash. Thus, WokChow could still prove customer confusion within the unjust enrichment context.

Lastly, WokChow's claims under the Tennessee Consumer Protection Act do not require the same analysis as trademark claims like DoorDash suggests. While consumer confusion can support a claim under Tenn. Code Ann. §§ 47-18-104(b)(2) and (3), WokChow has also asserted claims under Tenn. Code Ann. §§ 47-18-104(b)(1), (5), (14), (22), and (27). *See* WokChow Complaint, ¶¶ 68-74. These separate counts do not hinge on any trademark claims being pursued in *Burger Antics*. DoorDash's attempt to establish overlap of claims is greatly exaggerated.

It should also be noted that the Tennessee Consumer Protection Act requires actions to be brought "where the alleged unfair or deceptive act or practice took place, is taking place, or is about to take place." *See* Tenn. Code Ann. § 47-18-109(2). Clearly, WokChow's complaints are based only on conduct in Tennessee.

Given that the issues in this matter and *Burger Antics* are almost completely ***dis***similar, transfer is not warranted.

### C. Equitable Considerations Weigh Against Transfer.

As explained above, a first-to-file theory does not end the Court's analysis. Even if the Court were to find that all three factors of the first-to-file analysis are present, which they are not, it must also evaluate the equitable concerns with transferring this matter to the Northern

9

District of Illinois.  *See Baatz v. Columbia Gas Transmission, LLC,* 814 F.3d 785, 791 (6th Cir. 2016) (stating that the court "must also evaluate whether there are any equitable concerns that weigh against applying it").  Therefore, even if the Court were to find there is a substantial similarity of the parties and issues, the inquiry does not end there.

Courts decline to transfer when "the balance of conveniences decidedly tilts to the second filed action."  *Employers Ins.*, 522 F.3d at 275; *also Baatz,* 814 F.3d at 792 (the first-to-file rule "is not a mandate directing wooden application of the rule without regard to extraordinary circumstances, inequitable conduct, bad faith, or forum shopping") (citations omitted); *Handy v. Shaw, Bransford, Veilleux & Roth,* 325 F.3d 346, 350 (D.C. Cir. 2003) (emphasizing that district courts should balance equitable considerations rather than use "a mechanical rule of thumb").

In weighing the balance of conveniences, courts should apply a similar analysis as they would in evaluating a motion to transfer under 28 U.S.C. § 1404(a).  *Employers Ins. of Wausau*, 522 F.3d at 278. *See also Research Automation,* 626 F.3d at 977 (holding that there is no preference for a first-filed case and the factors under 28 U.S.C. § 1404(a) apply in evaluating a request for transfer, and stating that "[w]here a case is filed first should weigh no more heavily in the district court's analysis than the plaintiffs' choice of forum in a section 1404(a) calculation").

In the Sixth Circuit, the factors that are relevant in a motion to transfer under 28 U.S.C. § 1404(a) are: (1) the convenience of the parties and witnesses, (2) the accessibility of evidence, (3) the availability of process to make reluctant witnesses testify, (4) the costs of obtaining willing witnesses, (5) the practical problems of trying the case most expeditiously and inexpensively, and (6) the interests of justice.  *See Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (setting out six factors, and stating that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").  Sixth Circuit courts

10

have also considered the locus of operative facts and the relative means of the parties in evaluating a motion to transfer. *See Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).

### 1.   WokChow's Choice of Forum Is Given Substantial Consideration.

One of the most significant factors in considering whether venue should be transferred is the plaintiff's choice of forum. *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008). "A plaintiff's choice of forum is usually entitled to 'substantial consideration'" in considering whether a transfer of venue is warranted. *Id.* at 962; *Warrick v. Gen. Elec. Co.,* 70 F.3d 736, 741 (2d Cir. 1995). This is especially true where the plaintiff also resides in the chosen state or forum. *Maples v. United States*, 2018 WL 943213, at *2 (M.D. Tenn. Feb. 16, 2018); *Smith*, 578 F. Supp. 2d at 962; *FUL, Inc. v. Unified Sch. Dist. No. 204,* 839 F. Supp. 1307, 1311 (N.D. Ill. 1993). WokChow resides in Tennessee. The Middle District of Tennessee is a far more convenient forum for WokChow than the Northern District of Illinois. In light of the substantial consideration given to Plaintiff's choice of forum, transfer is unwarranted.

### 2.   The Practicality, Accessibility, and Costs of Obtaining Witnesses in this Forum Weigh Against Transfer.

When considered together, the second through fourth factors – (2) the accessibility of evidence, (3) the availability of process to make reluctant witnesses testify, and (4) the costs of obtaining willing witnesses – also weigh against transfer. All of the evidence relating to WokChow's claims and DoorDash's conduct are found in the State of Tennessee. All of WokChow's employees are located in Tennessee and all of the DoorDash drivers with knowledge of this case are located in Tennessee. It will be much easier to compel a witness to testify in this Court than to get a witness to travel approximately 540 miles to Chicago, Illinois, where *Burger Antics* is pending. DoorDash does not, and cannot, contend that it does not have

significant contacts with this forum. DoorDash has enormous operations in Tennessee. Since DoorDash is headquartered in San Francisco, whether it litigates in Tennessee or Chicago, the difference in its burden is minimal. In comparison, Plaintiff and all fact witnesses will have significant inconvenience if transfer is ordered.

### D. A Stay Also Is Not Warranted.

If a court determines that the first-to-file rule applies, the court can either stay the second-filed action pending the outcome of the first-filed suit or transfer the second-filed action to the court of the first-filed action. *Fuller*, 370 F. Supp. 2d at 689; *Smithers-Oasis Co. v. Clifford Sales & Mktg.*, 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002); *Plating Res.*, 47 F. Supp. 2d at 903-06. Here, applying the first-to-file rule is not warranted as the requisite factors have not been satisfied. Therefore, there is no basis to transfer or stay this action.

### CONCLUSION

Given DoorDash's refusal to concede jurisdiction, this Court is obligated to determine whether it has jurisdiction before making a determination on transfer. If there is no federal jurisdiction, Plaintiff is happy to proceed in state court. If jurisdiction is found, then the Court should weigh all factors under the first-to-file rule. Because there is no overlap among the plaintiffs or claims, and Tennessee is Plaintiff's choice of forum where every witness resides, transfer is not warranted. There is also no reason to stay the case. Defendant's motion should be denied in its entirety.

DATED this 11th day of January, 2019.

Respectfully submitted,

*/s/ William F. Burns*
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Ave.
Memphis, TN 38103
(901) 529-7996
bburns@watsonburns.com

*/s/ E. Adam Webb*
E. Adams Webb
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339
(770) 444-0773
Adam@WebbLLC.com

*Attorneys for Plaintiff*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2019, I presented the foregoing to the Clerk of Court

for filing and uploading to the CM/ECF system, which will send a notice to all counsel of record.

DATED this 11th day of January, 2019.

         */s/ E. Adam Webb*

         E. Adam Webb

14